# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISSA RUBENSTEIN, | ) Case No. CV 13-9549 JLS (KK) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER DISMISSING PLAINTIFF'S |
| v. | ) THIRD AMENDED COMPLAINT WITH |
| | ) LEAVE TO AMEND |
| WHITTIER POLICE DEPARTMENT, et | ) |
| al., | ) |
| Defendants. | ) |

---

### I.

### <u>INTRODUCTION</u>

On April 30, 2014, plaintiff, proceeding *in forma pauperis*, filed a Third Amended Complaint ("TAC") alleging multiple civil rights claims against defendant Whittier Police Department ("WPD") and eleven named WPD officers (collectively "WPD officers"). Upon screening the TAC pursuant to 28 U.S.C. § 1915(e)(2), the Court finds that plaintiff's allegations state a claim under the Fourth Amendment, but do not state a claim in regard to any of her other causes of action. **Accordingly, the TAC is dismissed with leave to amend. If plaintiff desires to pursue this action, she is ORDERED to file within 28 days of the service date of this Order a Fourth Amended Complaint remedying the deficiencies discussed below or, alternatively, a voluntary dismissal of all claims and defendants unrelated to her cognizable Fourth Amendment claim.**

1

## II.

### PROCEDURAL BACKGROUND

On January 8, 2014, plaintiff Elissa Rubenstein ("plaintiff"), who is at liberty and has been granted leave to proceed *in forma pauperis*, filed a *pro se* Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983").  (Docket No. 1).  Plaintiff sued the WPD and "Does 1-10" ("Doe Defendants").  Plaintiff sued the Doe Defendants in their individual and official capacities, and sought monetary relief from all defendants.

On January 14, 2014, this Court dismissed the Original Complaint and granted plaintiff leave to amend to the extent plaintiff could state any viable claims against the defendants. (Docket No. 8).  On January 28, 2014, plaintiff filed a First Amended Complaint which alleged multiple civil rights claims against only defendant WPD—apparently predicated on most of the same misconduct alleged in the Original Complaint—and sought monetary relief from defendant WPD.  (Docket No. 9).  On February 25, 2014, this Court dismissed the First Amended Complaint because it failed to comply with Rule 8 ("Rule 8") and Rule 10 ("Rule 10") of the Federal Rules of Civil Procedure and failed to state a viable Section 1983 claim for municipal liability against defendant WPD.  (Docket No. 11).  The Court granted plaintiff leave to amend to the extent she could state any viable claims against the defendant.

On March 11, 2014, plaintiff filed a Second Amended Complaint which alleged multiple civil rights claims against

2

eleven named WPD officers[1] and defendant WPD, again apparently predicated on most of the same misconduct alleged in plaintiff's first two complaints.  (Docket No. 12).  Plaintiff sued the individual defendants in their official capacities only, and sought monetary relief from all defendants.  On April 23, 2014, this Court dismissed the Second Amended Complaint because it again failed to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and also failed to state a viable Section 1983 municipal liability claim.  (Docket No. 15).  The Court granted plaintiff leave to amend to the extent she could state any viable claims against the defendants.

On April 30, 2014, plaintiff filed the TAC, which alleges multiple civil rights claims against defendant WPD and the same eleven named WPD officers, again apparently predicated on most of the same misconduct alleged in plaintiff's first three complaints.  (Docket No. 16).  Plaintiff again sues the individual defendants in their official capacities only, and seeks only monetary relief.  (TAC at 2-4, 25-27).

---

[1]Specifically, the Second Amended Complaint sued WPD officers Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, Becker, Hedgpeth, and Dineen.

3

### III.

### **FACTUAL ALLEGATIONS IN THE TAC**

**A.   2009 Events**

On February 4, 2009, plaintiff was seriously injured in an automobile accident with a parked car.  (<u>TAC</u> at 9).  Plaintiff left the scene of the accident without contacting the police or the owner of the car, drove "the few blocks to her home," and lay down.  (<u>Id.</u> at 9-10).  Suddenly, defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker shouted at plaintiff's door and barged into her house without plaintiff's consent and without a warrant or probable cause. (<u>Id.</u> at 10, 24).  Plaintiff was forced out of her bed and was confined to a chair.  (<u>Id.</u> at 10).  For an hour and forty-five minutes, the defendants interrogated plaintiff and searched her home.  (<u>Id.</u>).  Plaintiff was "docile and accommodating at all times."  (<u>Id.</u>).  Plaintiff was not allowed to move freely, contact another person for help, seek needed medical attention, or go to the restroom.  (<u>Id.</u>).  Defendants suspected plaintiff had been drinking or taking drugs and attempted to coerce plaintiff into confessing to the crime of driving under the influence of alcohol.  (<u>Id.</u>).

After an hour and forty-five minutes, defendants finally called an ambulance and plaintiff was taken to Whittier Hospital Medical Center.  (<u>Id.</u> at 11).  At the hospital, defendants interrogated plaintiff for another forty-five minutes and again attempted to coerce plaintiff into confessing to drunk driving. (<u>Id.</u>).  At the end of the interrogation, defendants performed a

blood test upon plaintiff, "seemingly without doctor or nurse supervision," and determined that plaintiff was not drunk. (Id.).  Plaintiff was later convicted in California Superior Court of "leaving the scene of an accident."  (Id. at 23).

Soon after the events of February 4, 2009, defendants contacted the Whittier Planning Department and reported that there were code violations in plaintiff's home.  (Id. at 11, 16). Plaintiff, in turn, was notified by the Planning Department that there were code violations in her home.  (Id.).  Plaintiff was frightened by the notification, and "felt she might be being punished by defendants because of their belief that Plaintiff was a drunk driver and/or a drug taker."  (Id. at 11).

In addition, defendants also contacted the Los Angeles County Social Services Department ("SSD") and reported suspected elder abuse in plaintiff's household.  (Id. at 11, 18).  The SSD notified plaintiff that someone would be coming to plaintiff's home to investigate this report.  (Id. at 11).  Plaintiff and her fiancé were subsequently investigated for their treatment of the fiancé's elderly mother who lived in the front house on the same property as plaintiff.  (Id.).

**B.    2010 Incident**

On September 20, 2010, plaintiff called the Whittier Police Department to report she heard a neighbor screaming in distress. (Id. at 4, 11, 23).  Defendants Hedgpeth and Dineen (who were not among the WPD officers involved in the search of plaintiff's home and her arrest in 2009) responded to the call.  (Id.). Defendants Hedgpeth and Dineen refused to talk to plaintiff,

refused to take plaintiff's complaint, and instead defamed her by telling plaintiff's fiancé plaintiff was hysterical and that she should lie down and take her pills.  (Id. at 11-12, 20-21). Since defendants Hedgpeth and Dineen were "not involved with [plaintiff's] problems in 2009" and otherwise had "[no] personal knowledge of Plaintiff's mental state," plaintiff believes they learned about her mental condition "probably from a dossier being kept on file at [Whittier] police headquarters put together by the Defendants who originally arrested and injured Plaintiff" in 2009.  (Id. at 23-24).

C.   **Claims**

     Construed liberally, the TAC's five claims allege defendants violated five federal constitutional provisions:

     (1) Claim One: Fourth Amendment Violations: Plaintiff claims defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker deprived her of her Fourth Amendment right to be free from unreasonable searches and seizures by:

     (a) entering and searching her home without a warrant; and

     (b) seizing her without a warrant and without probable cause.  (TAC at 13-16).

     (2) Claims Two and Three: Ninth Amendment Violations: Plaintiff claims defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker deprived plaintiff of her constitutional right, inferred from the Ninth Amendment, essentially to be free from further police harassment and police injury after a lawful arrest, by:

(a) notifying the Whittier City Planning Department of code
violations at plaintiff's house (Claim Two); and

(b) defaming plaintiff by calling the SSD and suggesting
that it conduct an investigation of elder abuse at
plaintiff's house (Claim Three).   (TAC at 16-19).

(3) Claim Four: Fourteenth Amendment Violations: Plaintiff
claims defendants deprived plaintiff of three separate categories
of rights under the Fourteenth Amendment:

(a) Procedural Due Process violation: Plaintiff claims the
defendants deprived her of her procedural due process rights
by engaging in conduct that "set up their own separate
system of 'justice' . . . apart from her [own] arrest and
subsequent trial" and by "punishing, injuring, humiliating,
defaming, and harassing Plaintiff, and invading her privacy,
outside the normal legal process . . . ."   (TAC at 21).

(b) Substantive Due Process violation: Plaintiff claims
defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng,
Esquivel, Harrison, and Becker violated her substantive due
process rights by searching her home, interrogating her, and
defaming her before the Whittier City Planning Department
and the SSD.   (TAC at 20).

(c) Equal Protection Clause violation: Plaintiff claims
defendants Hedgpeth and Dineen violated the Equal Protection
Clause of the Fourteenth Amendment by refusing to
investigate her September 20, 2010, police complaint.   (TAC
at 21).

(4) Claim Five: Eighth Amendment Violation: Plaintiff claims

7

defendants Hedgpeth and Dineen deprived plaintiff of her Eighth Amendment right to be free from cruel and unusual punishment by refusing to investigate her September 20, 2010, police complaint, refusing to talk to plaintiff, and instead defaming plaintiff by telling her fiancé that plaintiff was hysterical, needed to lie down, and needed to take a pill.  (TAC at 23-25).

As a result of defendants' actions, plaintiff's fiancé moved out and ended the couple's lengthy engagement, and plaintiff entered "a downward spiral" which "caus[ed] her to slowly begin to lose her planned marital bond, her love, her future plans, her financial security, her career plans and ability to work, her home and eventually her mental and physical health."  (TAC at 15, 17, 19, 22, 24-25).

**IV.**

**STANDARD OF REVIEW**

As plaintiff is proceeding *in forma pauperis*, the Court must screen the TAC prior to ordering service on any defendant, and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

In determining whether a complaint fails to state a claim for purposes of screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same pleading standard from Rule 8 of the Federal Rules of Civil Procedure as it would when evaluating a

8

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).
See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In addition, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

Especially in civil rights cases, a *pro se* plaintiff's pleadings are liberally construed to afford the plaintiff "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*)) (internal quotation marks omitted). If,

however, a court finds that a *pro se* complaint has failed to state a claim, dismissal may be with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  *Pro se* plaintiffs should be permitted leave to amend unless it is absolutely clear that the complaint's deficiencies cannot be cured.  Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("Normally, when a viable case may be pled, a district court should freely grant leave to amend.").  A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**V.**

**DISCUSSION**

**A.   Failure to State Municipal Liability and Official Capacity Claims**

In order to state a claim for a civil rights violation under 42 U.S.C. section 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of a right guaranteed under the U.S. Constitution or a federal statute.  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  However, a local government cannot be held liable under Section 1983 on a *respondeat superior* theory, that is, solely because it employs a tortfeasor.  Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Local government entities, such as defendant WPD, may be held liable only if the alleged wrongdoing was committed pursuant to a

10

government policy, custom or usage.  See Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Monell, 436 U.S. at 691; Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002) (describing "two routes" to municipal liability: (1) where municipality's official policy, regulation, or decision violated plaintiff's rights, or (2) alternatively where municipality failed to act under circumstances showing its deliberate indifference to plaintiff's rights).  Under certain circumstances, a single act, when carried out by a municipal "policymaker," may also give rise to Monell liability, even in the absence of a municipal policy or custom.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ("[Section 1983] municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

Municipal liability may also arise when an unwritten custom becomes "so 'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy.'"  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Monell, 436 U.S. at 691); see Thomas v. Baca, 514 F. Supp. 2d 1201, 1212 (C.D. Cal. 2007) ("A custom is a 'longstanding practice . . . which constitutes the standard operating procedure of the local government entity.'") (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1151 (9th Cir. 2005)).  "Isolated or sporadic incidents" are insufficient to establish an improper municipal custom.  Trevino, 99 F.3d at 918 ("Liability for improper custom

11

may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (internal citations omitted).

Suits against governmental officers in their official capacities are subject to the same requirements as Monell claims against local governments.  See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity of which an officer is an agent.") (internal citation omitted).  Indeed, despite naming individual governmental officials, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Id. (quoting Monell, 436 U.S. at 691).  Hence, as with claims against local governments under Monell, to impose liability against officials acting in their official capacity, "the entity's 'policy or custom' must have played a part in the violation of federal law."  Id. at 166 (internal citations omitted).

Here, the TAC fails to allege WPD maintained a policy or custom that caused any constitutional violation by a particular governmental actor.  More specifically, plaintiff does not allege that any of the WPD officers was a municipal "policymaker" such that a single act by such officials would give rise to Monell liability.  Nor does plaintiff claim that the alleged misconduct was committed pursuant to any official government policy or custom.  Rather, the alleged misconduct plaintiff complains of

12

Case 2:13-cv-09549-JLS-KK   Document 20   Filed 08/15/14   Page 13 of 26   Page ID #:815


(including an illegal search of her home, false reports to the Whittier City Planning Department and SSD, and the failure to investigate her complaints) was committed by individual officers *not* acting pursuant to any identifiable governmental policy or custom.  While plaintiff speculates that defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison and Becker "in all probability" maintained a "dossier" about plaintiff "on file at police headquarters" that "aimed to set the entire Whittier Police Department against plaintiff," and that such information "caus[ed] the [WPD] and its officers . . . to treat plaintiff cruelly and exhibit only hostility to [plaintiff] for no valid reason" (TAC at 23-24), such speculation is insufficient to state a municipal liability claim based on an unwritten municipal custom.  See Trevino, 99 F.3d at 920 ("When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom.").  Accordingly, plaintiff's claims against defendant WPD and the defendant WPD officers sued in their official capacities must be dismissed.  **Plaintiff should only include claims against defendant WPD and the defendant WPD officers in their official capacities in any amended complaint if she can allege facts sufficient to establish that the alleged wrongdoing was committed pursuant to a government policy, custom or usage.**

**B.   Failure to State Individual Capacity Claims**

In contrast to suits against governmental officers in their

13

official capacities and <u>Monell</u> claims against local governments, individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." <u>Graham</u>, 473 U.S. at 165.  "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  In short, "there must be a showing of personal participation in the alleged rights deprivation . . . ." <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) (internal citation omitted).  <u>See also</u> <u>Taylor</u>, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").  While individual governmental agents may still be held liable for group participation in unlawful conduct, there must be some showing of "individual participation in the unlawful conduct" for imposition of liability under Section 1983. Absent such individual participation, an officer cannot be held liable based solely on membership in a group or team that engages in unconstitutional conduct unless each officer was an "integral participant" in the constitutional violation alleged.  <u>Chuman v. Wright</u>, 76 F.3d 292, 294 (9th Cir. 1996).  <u>See also</u> <u>Jones</u>, 297 F.3d at 934.

Even if the Court were to very liberally construe the TAC as attempting to assert individual capacity claims[2] against the WPD

---

[2] On February 18, 2014, plaintiff filed a request to proceed *in forma pauperis* ("IFP Application") and lodged a complaint in

14

officers, plaintiff largely fails to state a Section 1983 claim against any identifiable individual defendant.

      1.   Personal Involvement of Defendants

      For the most part, the TAC does not sufficiently allege the personal involvement of the WPD officers in the constitutional violations complained of and, thus, does not assert viable Section 1983 individual capacity claims.  All of plaintiff's claims rely on general and conclusory allegations against the WPD officers collectively, without specifying the individual participation of each officer in the events giving rise to each claim.  As part of her Fourth Amendment claim, plaintiff alleges defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker violated her constitutional rights on February 4, 2009, when they searched her home without a warrant and arrested her without a warrant or probable cause. (TAC at 13-16).  As part of her Ninth Amendment claim, plaintiff alleges defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker violated her constitutional rights by making false reports against plaintiff to the Whittier City Planning Department and the SSD.  (TAC at 16-19).  As part of her Eighth Amendment claim, plaintiff alleges defendants Hedgpeth and Dineen violated her constitutional rights by refusing to

_____

Central District of California, Case No. CV 14-1222, which asserted essentially the same claims against the WPD officers based on the same underlying transactions as the TAC, but sued the defendants in their individual capacities only. (Case No. CV 14-1222, Docket No. 1-1).  The District Judge denied plaintiff's IFP Application, noting that any relief to which plaintiff might be entitled against the WPD officers in their individual capacities could be obtained in the instant pending action. (Docket No. 2).

15

investigate her complaint and by defaming her on September 20, 2010.  (TAC at 23-25).  Plaintiff's Fourteenth Amendment claims are predicated on all of these incidents.  (TAC at 19-22).  Aside from naming the group of officers involved in each of these incidents, plaintiff does not specify that any individual defendant took any particular act that resulted in a constitutional violation.  Rather, in each of these claims, plaintiff always refers to the defendants as an undifferentiated group involved in the constitutional violations alleged.  See Jones, 297 F.3d at 934 (holding that police officers could not be held liable under Section 1983 for damages caused in an unreasonable search under the Fourth Amendment based on mere membership in a searching party and absent evidence of personal involvement in causing the damages).

The Court finds plaintiff's allegations in regard to her claim that defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker illegally entered plaintiff's apartment and arrested her in violation of her Fourth Amendment rights to be sufficient.  The TAC's allegations make clear that each of the defendants personally participated in the unconstitutional conduct complained of (i.e. the warrantless entry into the apartment and plaintiff's arrest).  However, all of plaintiff's other allegations of misconduct (including allegations of defamation and false reporting to the Planning Department and SSD) require precise identification of each officer's participation in bringing about the constitutional violation alleged.  See Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992) (holding that vague and conclusory allegations of

1  official participation in civil rights violations are not

2  sufficient to state a claim under Section 1983) (citing Ivey v.

3  Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.

4  1982)).  To the extent plaintiff fails to identify any specific

5  act or omission on the part of each particular defendant in

6  bringing about the constitutional violations alleged, the TAC

7  fails to state individual capacity claims against the defendant

8  WPD officers, with the noted exception of plaintiff's Fourth

9  Amendment claim.

10        2.   Claim One — Fourth Amendment

11        The Fourth Amendment requires that an officer have probable

12  cause before arresting a suspect, such that "an arrest without

13  probable cause violates the Fourth Amendment and gives rise to a

14  claim for damages under [Section] 1983." Lee v. City of Los

15  Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (internal citations

16  and quotation marks omitted).  Similarly, a warrantless entry

17  into a person's home to effect an arrest is presumed to be

18  unreasonable under the Fourth Amendment absent probable cause.

19  See Payton v. New York, 445 U.S. 573, 586, 590, 100 S. Ct. 1371,

20  63 L. Ed. 2d 639 (1980) (warrantless arrest in suspect's dwelling

21  presumptively unreasonable); LaLonde v. Cnty. of Riverside, 204

22  F.3d 947, 954 (9th Cir. 2000) ("It is a basic principle of Fourth

23  Amendment law that searches and seizures inside a home without a

24  warrant are presumptively unreasonable.") (internal citation and

25  quotation marks omitted).  Probable cause exists when, "under the

26  totality of circumstances known to the arresting officers, a

27  prudent person would have concluded that there was a fair

28  probability that [the defendant] had committed a crime." Grant,

315 F.3d at 1085 (internal citation omitted).  "A police officer has probable cause to effect an arrest if 'at the moment the arrest was made . . . the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the suspect had violated a criminal law." Orin v. Barclay, 272 F.3d 1207, 1218 (9th Cir. 2001) (quoting Beck v. State of Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)).

Here, liberally construed, the TAC alleges facts which plausibly support an inference that the warrantless entry into plaintiff's home and the warrantless arrest of plaintiff by defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker in February 2009 violated her Fourth Amendment rights.  Hence, the TAC states a claim under the Fourth Amendment.

3.    Claims Two and Three — Ninth Amendment

The TAC fails to state a Section 1983 claim predicated on a Ninth Amendment violation.  In short, the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986).  Accordingly, plaintiff's Second and Third Claims predicated on alleged Ninth Amendment violations must be dismissed with leave to amend.

4.    Claim Four — Fourteenth Amendment (Due Process and Equal Protection)

The TAC fails to state a Section 1983 claim predicated on a

18

violation of the Fourteenth Amendment's due process and equal protection clauses.

(a)   Procedural Due Process Claim

The procedural due process guarantee in the Due Process Clause of the Fourteenth Amendment requires "some kind of a hearing *before* the State deprives a person of [a] liberty or property [interest]." Zinermon v. Burch, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (emphasis in original).

Plaintiff alleges defendants violated her procedural due process rights by "set[ting] up their own separate system of 'justice' . . . apart from her own arrest and subsequent trial." (TAC at 21).   Plaintiff's allegation does not demonstrate the deprivation of any liberty or property interest that would give rise to a procedural due process claim.

Plaintiff also makes allegations throughout the claims in the TAC that defendants "defamed" her before her fiancé, the Whittier City Planning Department, and the SSD.   (TAC at 16-20; 23-25).   These references may be liberally construed as attempting to assert a Section 1983 claim for defamation, based on the procedural protections of the Due Process Clause.   To amount to a procedural due process violation giving rise to a viable Section 1983 defamation claim, a plaintiff must allege injury to reputation "plus" loss of a recognizable property or liberty interest.   See Herb-Hallman Chevrolet, Inc. v. Nash-Holmes, 169 F.3d 636, 645 (9th Cir. 1999) ("There are two ways to state a cognizable § 1983 claim for defamation-plus:   (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury

19

to reputation caused the denial of a federally protected right.")
(internal citation omitted).  Plaintiff alleges no facts
indicating the loss of a recognizable property or liberty
interest as a result of the alleged reports to the Whittier City
Planning Department and the SSD and, thus, fails to state a
defamation claim.  Because plaintiff may still be able to allege
facts showing the loss of a recognizable property or liberty
interest as a result of the alleged reports, dismissal of
plaintiff's procedural due process claim should be with leave to
amend.

       (b)   Substantive Due Process Claim

     Plaintiff fails to state a Section 1983 claim predicated on
the violation of her substantive due process rights under the
Fourteenth Amendment's Due Process Clause.  Plaintiff alleges her
substantive due process rights were violated in February 2009
when defendants interrogated her in her home, arrested her, and
attempted to force her to confess to drunk driving.  (TAC at 20).
In short, plaintiff's substantive due process claim is based on
essentially the same conduct that is the predicate for Claim One,
which arises under the Fourth Amendment.  Accordingly,
plaintiff's claim is subject to analysis under Fourth Amendment
principles, rather than under the Fourteenth Amendment.  See
Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708,
140 L. Ed. 2d 1043 (1998) (noting that if a specific
constitutional provision covers a plaintiff's constitutional
claim (e.g., the Fourth Amendment), "the claim must be analyzed
under the standard appropriate to that specific provision," and
not under general due process) (internal citations omitted).  See

also Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [excessive force claims relating to arrest or seizure by law enforcement]."). Hence, in light of the separate Fourth Amendment claim, plaintiff's substantive due process claim is superfluous and must be analyzed under Fourth Amendment principles.[3]

(c)   Equal Protection Clause Claim

Plaintiff also fails to state a Section 1983 claim predicated on an equal protection violation. The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

An equal protection claim may be established in two ways. First, a plaintiff may establish an equal protection claim by showing that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon the plaintiff's membership in a protected class. See, e.g., Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); Lee, 250 F.3d at

---

[3] Any allegations of defamation by the WPD officers as part of plaintiff's substantive due process claim are more properly addressed as part of plaintiff's procedural due process claim. See Paul v. Davis, 424 U.S. 693, 710-11, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (discussing requirements for Section 1983 defamation claims as part of *procedural* due process guarantees).

686.  Second, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose (or a compelling need in a case involving a suspect class or a fundamental right).  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); SeaRiver Maritime Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).

     Plaintiff does not allege facts showing an equal protection violation.  Here, plaintiff does not allege membership in any protected class that could form the basis of an equal protection claim.  See, e.g., Lee, 250 F.3d at 687 ("[T]he disabled do not constitute a suspect class for equal protection purposes . . . .") (internal citations and quotation marks omitted).  Plaintiff also fails to allege that a particular defendant intentionally treated plaintiff differently from others similarly situated.  Plaintiff's only allegation in support of her equal protection claim is her statement that "her intended police report [complaining of a screaming woman in her neighborhood] was excluded."  (TAC at 21).  This allegation, without further allegations of membership in a protected class, is insufficient to state a viable equal protection claim.

     Accordingly, plaintiff's Fourth Claim predicated on alleged Fourteenth Amendment violations is dismissed with leave to amend the procedural due process defamation claim.

     5.   Claim Five — Eighth Amendment (Cruel and Unusual Punishment)

     Liberally construed, the TAC appears to allege, in pertinent

1  part, that defendants Hedgpeth and Dineen subjected plaintiff to
2  cruel and unusual punishment because when they responded to
3  plaintiff's call on September 20, 2010, the two officers (1)
4  refused to talk to plaintiff, (2) refused to document plaintiff's
5  complaint, and (3) defamed plaintiff by telling plaintiff's
6  fiancé plaintiff was hysterical and that she should lie down and
7  take her pills.  (TAC at 23).

8      Plaintiff has failed to state a claim for an Eighth
9  Amendment violation.  First, as noted previously, Plaintiff has
10  not sufficiently alleged the individual participation of
11  defendants Hedgpeth and Dineen in the constitutional violation.
12  Furthermore, the defendants' conduct, even if improper, would not
13  implicate the Eighth Amendment's prohibition against cruel and
14  unusual punishment, which applies only *after* a defendant is
15  convicted and sentenced for a particular crime.[4]  See Wilson v.
16  Seiter, 501 U.S. 294, 296-97, 111 S. Ct. 2321, 115 L. Ed. 2d 271
17  (1991); Graham v. Connor, 490 U.S. 386, 393 & n.6, 109 S. Ct.
18  1865, 104 L. Ed. 2d 443 (1989).

18      Moreover, even if the foregoing allegations were evaluated
19  under the rubric of the Eighth Amendment, plaintiff fails to
20  state a viable Section 1983 claim against either defendant.
21  First, plaintiff does not cite any authority which establishes a
22  constitutional right to have the police investigate a crime in
23  any particular fashion.  Indeed, Ninth Circuit precedent suggests
24  _____

25      [4] To the extent plaintiff suggests that the actions of
26  defendants Hedgpeth and Dineen sought to "punish" plaintiff for
   her conviction for "leaving the scene of an accident," (TAC at
27  23), such speculation does not support an Eighth Amendment claim.
   See Pena, 976 F.2d at 471 (internal citation omitted).

28
                                23

otherwise.  See Gini v. Las Vegas Metro. Police Dep't., 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way . . . .") (citing DeShaney v. Winnebago Cnty., 489 U.S. 189, 195-96, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)).  See also Andersen v. Helzer, 551 Fed. Appx. 363, 363 (9th Cir. 2014) (district court properly dismissed due process claim against deputy sheriff defendants where plaintiff failed to allege facts in amended complaint showing defendants violated any federally protected right by allegedly failing to investigate theft of plaintiff's property). In addition, even if plaintiff's allegations that defendants Hedgpeth and Dineen would only speak with plaintiff's fiancé and stated that plaintiff was "hysterical" and "needed to take a pill" were true, they do not, without more, state a Section 1983 claim.  See Oltarzewski v. Ruggerio, 830 F.2d 136, 139 (9th Cir. 1987) (claims of verbal harassment or abuse do not state a constitutional deprivation under Section 1983) (internal citation omitted).  Accordingly, Claim Five must be dismissed with leave to amend.

**VI.**

**LEAVE TO FILE A FOURTH AMENDED COMPLAINT**

For the foregoing reasons, the TAC is subject to dismissal, except for plaintiff's Fourth Amendment claim as against defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker in their individual capacities.

Accordingly, **IT IS ORDERED THAT:**

1) **Within 28 days of the service date of this Order, plaintiff may file a Fourth Amended Complaint ("FAC") to attempt**

24

1  **to cure the deficiencies discussed above.**  The Clerk is directed
2  to provide plaintiff with a Central District of California Civil
3  Rights Complaint Form, CV-66, to facilitate plaintiff's filing of
4  an FAC if she elects to proceed with this action.  Plaintiff is
5  strongly encouraged to use that form.

6      2) **Alternatively, plaintiff may voluntarily dismiss all**
7  **claims and defendants unrelated to her Fourth Amendment claim**
8  **(Claim One) and proceed on her Fourth Amendment claim alone.**  In
9  other words, plaintiff must: (a) file a voluntary dismissal of
10 (i) defendant WPD (ii) defendants Nyberg, Plank, Bolanos, Karson,
11 Jensen, Cheng, Esquivel, Harrison, and Becker in their official
12 capacities *only*, (iii) defendants Hedgpeth and Dineen in their
13 individual *and* official capacities, and (iv) Claims Two, Three,
14 Four, and Five; and (b) proceed *only* on Claim One against
15 defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng,
16 Esquivel, Harrison, and Becker in their individual capacities
17 *only*.  **If plaintiff elects to dismiss these defendants and**
18 **claims, she should file within 28 days of the service date of**
19 **this Order, a document captioned "Voluntary Dismissal" in which**
20 **she identifies the claims and the defendants she is dismissing**
21 **from the action.**

22     3) If plaintiff chooses to file an FAC, the FAC should bear
23 the docket number assigned to this case, be labeled "Fourth
24 Amended Complaint," and be complete in and of itself without
25 reference to the TAC or any other pleading, attachment, or
26 document.  **Plaintiff is advised that the allegations regarding**
27 **the Fourth Amendment claim, as presented in the TAC, are**
28 **sufficient to state a claim.  Although she must include them in**

any FAC, she need not supplement them with any additional facts. However, with respect to plaintiff's procedural due process claim based upon alleged defamation, plaintiff must allege additional facts sufficient to establish the deprivation of a recognizable liberty or property interest to state a claim.

Plaintiff is admonished that if she fails to timely file a sufficient FAC or, alternatively, a voluntary dismissal as described above, the Court will recommend that this action be dismissed with prejudice on the grounds set forth above and/or for failure to diligently prosecute.

DATED: August 15, 2014        _____

                              HON. KENLY KIYA KATO
                              UNITED STATES MAGISTRATE JUDGE

26