UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISSA RUBENSTEIN, | ) Case No. CV 13-9549 JLS (KK) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER DISMISSING PLAINTIFF'S |
| v. | ) FOURTH AMENDED COMPLAINT WITH |
| | ) LEAVE TO AMEND |
| WHITTIER POLICE DEPARTMENT, et | ) |
| al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**I.**

**INTRODUCTION**

On August 27, 2014, plaintiff, proceeding *in forma pauperis*, filed a *pro se* Fourth Amended Complaint ("FAC") alleging two civil rights claims against nine named Whittier Police Department ("WPD") officers, in their individual capacities.  Upon screening the FAC pursuant to 28 U.S.C. § 1915(e)(2), the Court finds that plaintiff's allegations state a claim under the Fourth Amendment in regard to defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel, but do not state a claim in regard to the

1

remaining two defendants or her other cause of action. **Accordingly, the FAC is dismissed with leave to amend. If plaintiff desires to pursue this action, she is ORDERED to file within 28 days of the service date of this Order a Fifth Amended Complaint remedying the deficiencies discussed below or, alternatively, a voluntary dismissal of all claims and defendants unrelated to her cognizable Fourth Amendment claim against the aforementioned seven defendants.**

## II.

### PROCEDURAL BACKGROUND

On January 8, 2014, plaintiff Elissa Rubenstein ("plaintiff"), who is at liberty and has been granted leave to proceed *in forma pauperis*, filed a *pro se* Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983"). (ECF Docket No. ("dkt.") 1). Plaintiff sued the WPD and "Does 1-10" ("Doe Defendants"). Plaintiff sued the Doe Defendants in their individual and official capacities, and sought monetary relief from all defendants.

On January 14, 2014, this Court dismissed the Original Complaint and granted plaintiff leave to amend to the extent plaintiff could state any viable claims against the defendants. (Dkt. 8). On January 28, 2014, plaintiff filed a First Amended Complaint which alleged multiple civil rights claims against only defendant WPD — apparently predicated on most of the same misconduct alleged in the Original Complaint—and sought monetary relief from defendant WPD. (Dkt. 9). On February 25, 2014, this Court dismissed the First Amended Complaint because it failed to

comply with Rule 8 ("Rule 8") and Rule 10 ("Rule 10") of the Federal Rules of Civil Procedure and failed to state a viable Section 1983 claim for municipal liability against defendant WPD. (Dkt. 11).  The Court granted plaintiff leave to amend to the extent she could state any viable claims against the defendant.

On March 11, 2014, plaintiff filed a Second Amended Complaint which alleged multiple civil rights claims against eleven named WPD officers[1] and defendant WPD, again apparently predicated on most of the same misconduct alleged in plaintiff's first two complaints.  (Dkt. 12).  Plaintiff sued the individual defendants in their official capacities only, and sought monetary relief from all defendants.  On April 23, 2014, this Court dismissed the Second Amended Complaint because it again failed to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and also failed to state a viable Section 1983 municipal liability claim.  (Dkt. 15).  The Court granted plaintiff leave to amend to the extent she could state any viable claims against the defendants.

On April 30, 2014, plaintiff filed the Third Amended Complaint, which alleged multiple civil rights claims against defendant WPD and the same eleven named WPD officers, again apparently predicated on most of the same misconduct alleged in plaintiff's first three complaints.  (Dkt. 16).  Plaintiff again sued the individual defendants in their official capacities only, and sought only monetary relief.  On August 15, 2014, this Court

---

[1]   Specifically, the Second Amended Complaint sued WPD officers Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, Becker, Hedgpeth, and Dineen.

dismissed the Third Amended Complaint, finding that plaintiff stated a viable Fourth Amendment claim against nine of the eleven named WPD officers in their individual capacities,[2] but failed to state a claim in regard to all of her other causes of action against all other defendants.  (Dkt. 20).  The Court also found that plaintiff could plausibly allege facts in support of her procedural due process-based defamation claim in a later complaint.  Hence, the Court granted plaintiff leave to amend, instructing plaintiff that she could elect to either (1) proceed solely on her cognizable Fourth Amendment claim against the nine WPD defendants in their individual capacities; or (2) file a Fourth Amended Complaint including her Fourth Amendment claim and additional facts in support of her procedural due process-based defamation claim.

Plaintiff appears to have pursued the latter of these two options.  On August 27, 2014, plaintiff filed the instant FAC, asserting two civil rights claims under 42 U.S.C. § 1983, against the nine WPD officers identified by the Court in its Order dismissing the Third Amended Complaint, in their individual capacities.  (Dkt. 22).  Plaintiff seeks only monetary relief.  (FAC at 31-36).

///

///

///

///

_____

[2]  The nine officers in question were WPD officers Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker.

4

### III.

### ALLEGATIONS IN THE FAC

**A.    Factual Allegations**

On the afternoon of February 4, 2009, plaintiff was seriously injured in an automobile accident with another car. (FAC at 3-5, 19).  Suffering from severe bleeding, Plaintiff left the scene of the accident and went back to her home. (Id. at 5, 19).  Suddenly, about twenty minutes after the accident, defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel barged into plaintiff's home, without knocking or asking for plaintiff's consent to enter. (Id. at 19).  The defendants did not have a warrant or probable cause. (Id.).  Believing plaintiff to have been driving under the influence of alcohol, the defendants seized plaintiff, confined her to her chair, and interrogated her for a two-hour period without any break. (Id. at 20).  Throughout the interrogation, plaintiff remained compliant and asserted that while she was not intoxicated, she regretted leaving the scene of the automobile accident. (Id. at 21).  Despite plaintiff's statements, the defendants continued interrogating her and never administered any standard drunk driving tests to determine whether she was intoxicated. (Id. at 21-22).

Further, believing plaintiff to be engaged in illegal drug use, the defendants searched plaintiff's desk, drawers, bathroom medicine cabinet, and handbag. (Id. at 20).  Upon finding plaintiff's prescription medications, the defendants asked

plaintiff accusingly what each prescribed medication was for. (Id. at 20-21).

Throughout these events, two WPD officers, defendants Becker and Harrison, were in constant radio communication with the other seven defendants at the scene. (Id. at 21). Plaintiff speculates that defendants Becker and Harrison "must have condoned and acknowledged as okay the actions of those present." (Id. at 25).

At some point during the events, plaintiff's fiancé's mother came to check on plaintiff and requested the defendants at the scene to leave. (Id. at 22-23). The defendants disregarded her request. (Id. at 23).

Subsequently, after hearing of the incident, plaintiff's fiancé ended their engagement. (Id.). Plaintiff's fiancé was angry that the defendants had disturbed his mother and believed plaintiff to have committed some crime. (Id.). As a result, plaintiff entered "a downward spiral" which "caus[ed] her to slowly begin to lose her planned marital bond, her love, her future plans, her financial security, her career plans and ability to work at the profession she was engaged in of a Certified Nurse Assistant, her home and eventually her mental/emotional and physical health." (Id. at 24). Plaintiff also suffered psychosis during the few years following the end of her engagement and suffered physical symptoms, including chest pains, tachycardia, and shortness of breath. (Id. at 29).

///

///

**B.**   <u>**Legal Claims**</u>

The FAC asserts two legal claims against all defendants in their individual capacities:

(1) <u>Claim One: Fourth Amendment:</u> Plaintiff claims defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker deprived her of her Fourth Amendment right to be free from unreasonable searches and seizures by:

>   (a) entering and searching her home without a warrant on February 4, 2009; and

>   (b) seizing her and interrogating her without a warrant or probable cause. (<u>FAC</u> at 19-24).

(2) <u>Claim Two: Fourteenth Amendment (Procedural Due Process):</u> Plaintiff claims defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, Esquivel, Harrison, and Becker violated her rights to procedural due process, under the Due Process Clause of the Fourteenth Amendment, by:

>   (a) entering and searching her home and detaining her without a warrant on February 4, 2009 instead of instituting an objective process to determine the truth of their suspicion that plaintiff was intoxicated; and

>   (b) ruining and "defaming" plaintiff's reputation among her former fiancé and her fiancé's mother, by their actions on February 4, 2009. (<u>FAC</u> at 25-30).

**IV.**

**<u>STANDARD OF REVIEW</u>**

As plaintiff is proceeding *in forma pauperis*, the Court must screen the FAC prior to ordering service on any defendant, and is

7

required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  _See_ 28 U.S.C. § 1915(e)(2)(B); _see also_ _Barren v. Harrington_, 152 F.3d 1193, 1194 (9th Cir. 1998).

In determining whether a complaint fails to state a claim for purposes of screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same pleading standard from Rule 8 of the Federal Rules of Civil Procedure as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). _See_ _Watison v. Carter_, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  _Ashcroft v. Iqbal_, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  _Id._ (quoting _Twombly_, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" _Id._ (quoting _Twombly_, 550 U.S. at 557).  In addition, although a

court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

Especially in civil rights cases, a *pro se* plaintiff's pleadings are liberally construed to afford the plaintiff "the benefit of any doubt." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*)) (internal quotation marks omitted). If, however, a court finds that a *pro se* complaint has failed to state a claim, dismissal may be with or without leave to amend. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000). *Pro se* plaintiffs should be permitted leave to amend unless it is absolutely clear that the complaint's deficiencies cannot be cured. <u>Cafasso v. General Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) ("Normally, when a viable case may be pled, a district court should freely grant leave to amend."). A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend. <u>See</u> <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**V.**

**DISCUSSION**

**A.    Section 1983 Individual Capacity Claims**

In order to state a claim for a civil rights violation under 42 U.S.C. section 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of

9

a right guaranteed under the U.S. Constitution or a federal statute.  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  Suits against government officials under Section 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).  "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In short, "there must be a showing of personal participation in the alleged rights deprivation . . . ."  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (internal citation omitted). See also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").  While individual governmental agents may still be held liable for group participation in unlawful conduct, there must be some showing of "individual participation in the unlawful conduct" for imposition of liability under Section 1983.  Absent such individual participation, an officer cannot be held liable based solely on membership in a group or team that engages in unconstitutional conduct unless each officer was an "integral participant" in the

10

1 constitutional violation alleged.  Chuman v. Wright, 76 F.3d 292,
2 294 (9th Cir. 1996).  See also Jones, 297 F.3d at 934.

3 **B.    Claim One: Fourth Amendment**

4        The Fourth Amendment requires that an officer have probable
5 cause before arresting a suspect, such that "an arrest without
6 probable cause violates the Fourth Amendment and gives rise to a
7 claim for damages under [Section] 1983."  Lee v. City of Los
8 Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (internal citations
9 and quotation marks omitted).  Similarly, a warrantless entry
10 into a person's home to effect an arrest is presumed to be
11 unreasonable under the Fourth Amendment absent probable cause.
12 See Payton v. New York, 445 U.S. 573, 586, 590, 100 S. Ct. 1371,
13 63 L. Ed. 2d 639 (1980) (warrantless arrest in suspect's dwelling
14 presumptively unreasonable); LaLonde v. Cnty. of Riverside, 204
15 F.3d 947, 954 (9th Cir. 2000) ("It is a basic principle of Fourth
16 Amendment law that searches and seizures inside a home without a
17 warrant are presumptively unreasonable.") (internal citation and
18 quotation marks omitted).  Probable cause exists when, "under the
19 totality of circumstances known to the arresting officers, a
20 prudent person would have concluded that there was a fair
21 probability that [the defendant] had committed a crime."  Grant
22 v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002)
23 (internal citation omitted).  "A police officer has probable
24 cause to effect an arrest if 'at the moment the arrest was made .
25 . . the facts and circumstances within [his] knowledge and of
26 which [he] had reasonably trustworthy information were sufficient
27 to warrant a prudent man in believing' that the suspect had

28                                11

violated a criminal law." <u>Orin v. Barclay</u>, 272 F.3d 1207, 1218 (9th Cir. 2001) (quoting <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)).

Here, as was the case with plaintiff's Third Amended Complaint, the FAC's allegations regarding the warrantless entry and search of plaintiff's home on February 4, 2009 generally state a plausible Fourth Amendment claim.  However, *unlike* plaintiff's Third Amended Complaint, the FAC itself alleges *only* defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel *directly participated* in the warrantless entry. According to the FAC, the two remaining WPD defendants, defendants Becker and Harrison, did not participate in the warrantless entry and were only in radio communication with the officers that did.  (<u>FAC</u> at 21).  While plaintiff speculates that defendants Becker and Harrison "must have condoned and acknowledged as okay the actions of those present" at her home, mere knowledge or approval is insufficient to establish liability under Section 1983.  (<u>Id.</u> at 25).  To hold defendants Becker and Harrison liable under Section 1983, plaintiff must allege they either performed "an affirmative act, participate[d] in another's affirmative acts, or omit[tted] to perform an act which [they were] legally required to do that *cause*[d]" the constitutional violation alleged.  <u>Duffy</u>, 588 F.2d at 743.

Consequently, unlike the Third Amended Complaint, the Court must hold that the FAC fails to state a Section 1983 individual capacity claim under the Fourth Amendment against defendants Becker and Harrison and only states a plausible claim against the

seven defendants actually involved in the February 2009 incident. Accordingly, Claim One, as against defendants Becker and Harrison, must be dismissed with leave to amend.

**C.    Claim Two: Fourteenth Amendment (Procedural Due Process)**

The procedural due process guarantee in the Due Process Clause of the Fourteenth Amendment requires "some kind of a hearing *before* the State deprives a person of [a] liberty or property [interest]." Zinermon v. Burch, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (emphasis in original).

Plaintiff alleges the defendants violated her procedural due process rights on February 4, 2009 by failing to establish an objective process by which to determine the truth of their suspicions that she was intoxicated. (FAC at 27). That is, plaintiff claims that, instead of administering a breathalyzer test to determine whether plaintiff was intoxicated, defendants unnecessarily detained her and interrogated her. (Id. at 27-29). Plaintiff's procedural due process claim is based on essentially the same conduct (*i.e.* plaintiff's wrongful detention by the defendants) that is the predicate for Claim One, which arises under the Fourth Amendment. Accordingly, plaintiff's claim is subject to analysis under Fourth Amendment principles, rather than under the Fourteenth Amendment. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (noting that if a specific constitutional provision covers a plaintiff's constitutional claim (*e.g.*, the Fourth Amendment), "the claim must be analyzed under the standard appropriate to that specific provision," and not under general due process)

13

(internal citations omitted).   See also Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [excessive force claims relating to arrest or seizure by law enforcement].").   Hence, in light of the separate Fourth Amendment claim, plaintiff's procedural due process claim, as it relates to her detention on February 4, 2009, is superfluous and must be analyzed under Fourth Amendment principles.

Plaintiff also alleges defendants "defamed" her before her fiancé and her fiancé's mother because their actions on February 4, 2009 damaged her reputation.   (FAC at 26-28).   To the extent these allegations attempt to assert a Section 1983 claim for defamation, based on the procedural protections of the Due Process Clause, plaintiff fails to state a claim.   To amount to a procedural due process violation giving rise to a viable Section 1983 defamation claim, a plaintiff must allege injury to reputation "plus" loss of a recognizable property or liberty interest.   See Herb-Hallman Chevrolet, Inc. v. Nash-Holmes, 169 F.3d 636, 645 (9th Cir. 1999) ("There are two ways to state a cognizable § 1983 claim for defamation-plus:  (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right.") (internal citation omitted).   However, plaintiff has not alleged defamation

1  as a threshold matter.  Plaintiff alleges no facts showing the
2  defendants in any way defamed her and only claims reputational
3  harm from the defendants' actions on February 4, 2009.  In short,
4  plaintiff's "defamation" claim also simply appears to challenge
5  the *same conduct* that is the predicate for plaintiff's Fourth
6  Amendment claim.  Such allegations are insufficient to state a
7  claim of defamation under Section 1983 and are more properly
8  subject to analysis as part of plaintiff's Fourth Amendment
9  claim.  See Lewis, 523 U.S. at 843.  Accordingly, Claim Two must
10  be dismissed with leave to amend.

**VI.**

**ADVISEMENT REGARDING FIFTH AMENDED COMPLAINT**

12      Because any Fifth Amended Complaint will be plaintiff's
13  **fifth** opportunity to amend her complaint to rectify pleading
14  deficiencies, the Court advises plaintiff that it will not be
15  disposed toward another dismissal without prejudice and with
16  leave to amend.  "[A] district court's discretion over amendments
17  is especially broad 'where the court has already given a
18  plaintiff one or more opportunities to amend his complaint.'"
19  Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal.
20  2012) (Valerie Baker Fairbank, J.) (quoting DCD Programs, Ltd. v.
21  Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987)); see also Zavala
22  v. Bartnik, 348 F. App'x 211, 213 (9th Cir. 2009) ("Dismissal
23  with prejudice was proper because Zavala was given two prior
24  opportunities to amend his complaint in order to correct the
25  deficiencies identified by the district court but failed to do
26  so.").

15

If plaintiff fails timely to file a Fifth Amended Complaint, the dismissal will be converted to a "with prejudice" dismissal due to a lack of prosecution and failure to comply with the Court's order.   Likewise, if plaintiff does file a Fifth Amended Complaint, but the Fifth Amended Complaint still contains claims on which relief cannnot be granted, **the dismissal will be converted to a "with prejudice" dismissal.**

## VII.

## LEAVE TO FILE A FIFTH AMENDED COMPLAINT

For the foregoing reasons, the FAC is subject to dismissal, except for plaintiff's Fourth Amendment claim as against defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel, in their individual capacities.

Accordingly, **IT IS ORDERED THAT:**

1) **Within 28 days of the service date of this Order, plaintiff may file a Fifth Amended Complaint to attempt to cure the deficiencies discussed above.**   The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of an Fifth Amended Complaint if she elects to proceed with this action.   Plaintiff is strongly encouraged to use that form.

2) **Alternatively, plaintiff may voluntarily dismiss all claims and defendants unrelated to her cognizable Fourth Amendment claim (Claim One) against defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel, and proceed on her Fourth Amendment claim alone.**   In other words, plaintiff must: (a) file a voluntary dismissal of (i) defendants Becker and Harrison in their individual capacities, and (ii) Claim Two; and

(b) proceed *only* on Claim One against defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel, in their individual capacities *only*. **If plaintiff elects to dismiss these defendants and claims, she should file within 28 days of the service date of this Order, a document captioned "Voluntary Dismissal" in which she identifies the claims and the defendants she is dismissing from the action.**

     3) If plaintiff chooses to file a Fifth Amended Complaint, the Fifth Amended Complaint should bear the docket number assigned to this case, be labeled "Fifth Amended Complaint," and be complete in and of itself without reference to the FAC or any other pleading, attachment, or document. **Plaintiff is advised that the allegations regarding the Fourth Amendment claim, as presented in the FAC, are sufficient to state a claim against defendants Nyberg, Plank, Bolanos, Karson, Jensen, Cheng, and Esquivel. Although she must include them in any Fifth Amended Complaint she files, she need not supplement them with any additional facts. However, with respect to plaintiff's Fourth Amendment claim against defendants Becker and Harrison, plaintiff must allege additional facts showing their direct personal involvement in the Fourth Amendment violation alleged.**

///
///
///
///
///
///
///

17

     **Plaintiff is admonished that if she fails to timely file a sufficient Fifth Amended Complaint or, alternatively, a voluntary dismissal as described above, the Court will recommend that this action be dismissed with prejudice on the grounds set forth above and/or for failure to diligently prosecute.**

DATED: September 25, 2014

_____

HON. KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE